Joseph E. COLE, Plaintiff–Appellant,
Cross–Appellee,

v.

UNITED STATES of America,
Defendant–Appellee,
Cross–Appellant.

No. 87–8325.

United States Court of Appeals,
Eleventh Circuit.

Dec. 19, 1988.

Paul R. Bennett, Moore, Taylor & Associates, Columbus, Ga., for plaintiff-appellant, cross-appellee.

Henry L. Whisenhunt, Jr., Asst. U.S. Atty., Augusta, Ga., Mark W. Pennak, Dept. of Justice, Civ. Div., William Kanter, Washington, D.C., for defendant-appellee, cross-appellant.

Before RONEY, Chief Judge,
CLARK, Circuit Judge, and MORGAN,
Senior Circuit Judge.

PER CURIAM:

While in the military in 1958, plaintiff Joseph E. Cole suffered a leg injury for which the Veterans' Administration determined he was entitled to 10 percent disability payments. In 1979, Cole's disabled leg was negligently treated at a VA hospital for swelling which occurred as the result of two falls, and because of the treatment, has deteriorated to the point where doctors have advised that amputation may be the

proper treatment. Because of his leg and an unrelated head injury, Cole has been determined to be 100 percent disabled. Cole brought a negligence action against the Government pursuant to the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), alleging damages from negligent treatment he received in the VA hospital. After a bench trial, the district court awarded $384,000 in damages.

The court ordered the cessation of *all* future VA benefits for his leg until the amount of the benefits withheld equals the amount of the tort judgment. Both Cole and the Government appeal. Cole argues that the district court's award failed to adequately compensate him for special damages and pain and suffering, and should not have ordered cessation of *all* VA payments because only part of the benefits were attributable to the malpractice. The Government, although not disputing liability, argues that the district court improperly awarded Cole damages in excess of the $195,000 he originally sought in his administrative complaint and erred in first reviewing the administrator's decision that Cole's injury resulting from the malpractice was "secondarily service-connected" and then, in applying the setoff provisions of 38 U.S.C.A. § 351.

### Amount of Damages

█ We first hold that the district court could properly award Cole $384,000 in damages even though the award exceeds the $195,000 he originally sought in his administrative complaint. Although generally a plaintiff under the Federal Tort Claims Act may not seek greater damages than that sought in any prior administrative claim, an exception exists where "the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency." 28 U.S.C.A. § 2675(b).

In Cole's administrative complaint dated January 30, 1980, and received by the VA the next day, he described his injury as "severe burns to his knee which resulted in blood clots." He testified that when he filed his complaint he had been told by some doctors, and he believed, that he eventually would be able to return to work for the railroad. It was not until October 1981, some 21 months later, that Cole was diagnosed as having thrombophlebitis, a condition described by one of the Government's expert witnesses as "a clotting of the blood in the venous channels," and he learned that his condition was permanent. He must wear a knee brace and continues to suffer from swelling, weeping ulcers, and pain.

This Court has held that a reasonably based change in expectation as to the severity and permanence of an injury is newly discovered evidence within the meaning of section 2675(b). *Fraysier v. United States*, 766 F.2d 478 (11th Cir.1985). In *Fraysier*, the plaintiff was allowed to recover damages in excess of his administrative claim because at the time of filing he reasonably believed, based on a physician's incorrect diagnosis, that his condition would improve, but discovered later that his injuries were permanent. As we stated there, "[p]laintiff should not be charged with knowing what the doctors could not tell him." *Id.* at 481. *See also United States v. Alexander*, 238 F.2d 314, 318 (5th Cir.1956) (plaintiff allowed increase in damages when he believed at time of filing that his arm would heal but later discovered that it would not improve without surgery); *Husovsky v. United States*, 590 F.2d 944, 954–55 (D.C.Cir.1978) (prediction of increased life span warranted increased damages); *McDonald v. United States*, 555 F.Supp. 935, 957–62 (M.D.Pa.1983) (change in knowledge of severity of impairments in part supported newly discovered evidence determination) *aff'd mem.*, 738 F.2d 423 (3d Cir.1984); *Rabovsky v. United States*, 265 F.Supp. 587 (D.Conn.1967) (plaintiff allowed to increase damages after securing a medical opinion when, through no fault of his own, he had not consulted a physician and did not know the extent of his injuries at the time of filing his claim.)

This case is distinguishable from *Low v. United States*, 795 F.2d 466 (5th Cir.1986), on which the Government heavily relies. In that case, the court refused to allow the plaintiff to recover increased damages for

her injured child when at the time of filing the claim she knew that the child had cerebral palsy, a seizure disorder, and was blind, deaf, and mentally retarded and there was no evidence that these conditions worsened or that other conditions later developed. The court noted that the case was not one in which the claimant did not know or reasonably could not have known the severity of the injury. Rather, the evidence used to increase the damages sought went to the "precision" of the child's prognosis. Here, Cole learned nearly two years after he filed his administrative complaint that his condition was permanent and that he would never return to work. Thus, the district court's finding that Cole was not bound by the administrative claim because of newly discovered evidence is supported by the record.

### Adequacy of Damage Award

██ Cole contends that the district court's award of $384,000 is insufficient to compensate him for the damages he suffered. The clearly erroneous standard governs the review of factual determinations in FTCA actions, including the determination of damages. *Ferrero v. United States*, 603 F.2d 510, 512 (5th Cir.1979); *Davis v. Marsh*, 807 F.2d 908, 913 (11th Cir.1987). A trial judge's findings will be held to be clearly erroneous when, after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Because the district court did not itemize the damages in reaching its $384,000 award as required by Fed.R.Civ.P. 52(a), we are in the position of examining the single figure to determine whether clear error has been made. Cole argues that a conservative estimate of his lost future wages is $465,000 and that he has also lost $113,250 in past wages and insurance protection. Because the award does not even cover the special damages, Cole contends, the court must have failed to award him anything for pain and suffering. The Government responds that even accepting Cole's figures, the court's award amply compensated him because lost future earnings must be discounted to present value as required by Georgia law, and Cole neglected to deduct federal and state taxes from his estimates of past and future earnings. *See, e.g., Flannery v. United States*, 718 F.2d 108, 111 (4th Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2679, 81 L.Ed.2d 874 (1984); *Harden v. United States*, 688 F.2d 1025, 1029 (5th Cir.1982); *Mosley v. United States*, 538 F.2d 555, 558–59 (4th Cir.1976).

We hold that $384,000 is not on its face clearly insufficient. Nevertheless, because this case must be remanded, the district court should itemize the damages awarded, taking into account the required discount rate and the tax deductions. *See* Fed.R.Civ.P. 52(a); *Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); *Ferrero v. United States*, 603 F.2d 510 (5th Cir.1979).

██ In making its award, the district court ordered that the setoff provisions of section 351 be used.[1] The Government ar-

---

**1.** Section 351 provides:

Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded under any of the laws administered by the Veterans' Administration, or as a result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death were service-connected. Where an individual is, on or after December 1, 1962, awarded a judgment against the United States in a civil action brought pursuant to section 1346(b) of title 28 United States Code or, on or after December 1, 1962, enters into a settlement or compromise under section 2672 or 2677 of title 28 United States Code by reason of a disability, aggravation, or death treated pursuant to this section as if it were service-connected, then no benefits shall be paid to such individual for any month beginning after the date such judgment, settlement, or compromise on account of such disability, aggravation, or death becomes final until the aggregate amount of benefits which would be paid but for this sentence equals the

gues that Cole's increased disability because of the negligent treatment was determined by the VA to be service-connected under section 331,[2] and that section must therefore control the district court's treatment of the award with respect to any future benefits to which Cole is entitled.

Apparently the difference between the two sections is who must wait for their money—the Government or Cole. Under section 351, the award is reduced only by the amount of past benefits and Cole then is ineligible for his future increased disability benefits attributable to the malpractice until the aggregate of benefits withheld equals the tort judgment. *See United States v. Kubrick*, 444 U.S. 111, 116 n. 5, 100 S.Ct. 352, 356 n. 5, 62 L.Ed.2d 259 (1979); *Shaw v. U.S.A. Veterans Admin.*, 711 F.2d 156 (11th Cir.1983) (setoff available against future death benefits a veteran's widow actually receives). The Government argues that under section 331, which does not contain a provision dealing with cessation of benefits, Cole's tort award must be reduced by the present value of his *expected* future disability benefits in order to prevent double recovery. *See Brooks v. United States*, 337 U.S. 49, 53, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949); *United States v. Brown*, 348 U.S. 110, 113, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).

The district court apparently believed that if the award could not be set off pursuant to section 351, Cole would be doubly compensated for the same injury. Although not explicitly rejecting the Government's position that it had determined Cole to be eligible for benefits under section 331, the court found that the VA was motivated to "mischaracteriz[e]" the injury as secondarily service connected under section 331 rather than admit malpractice under section 351. Thus, the court

found that section 351's language was "broad enough to cover payments under any section of Chapter 11, including section 331."

We note that the Government argues that, theoretically, both methods should produce the same total payment. The Government further suggests that, in fact, Cole actually may receive more compensation under section 331 because his total future benefits will be computed based on his present rate of payment. The Government states that because disability payments historically have been increased over time, Cole may receive more in total dollars if the award is initially reduced and he continues to receive full benefits.

It is not our task, however, to decide which is the better method of compensation. The VA determined that Cole was to receive benefits under section 331, the basic entitlement provision. The district court did not explicitly reject that determination, but instead found that the setoff provisions of section 351 also were applicable to section 331, despite a contrary interpretation found in the VA manual and offered by the Government to the court.

> OFFSET NOT APPLICABLE. The offset provisions are applicable when the disability or death is considered service-connected solely by virtue of the provisions of 38 U.S.C. 351. If the disability or death is rated service-connected under other sections of Title 38, then compensation (or dependency and indemnity compensation) is not subject to offset notwithstanding that the claimant has received payments as the result of a tort claim.

VA Manual at M21–1, par. 29.53(b).

The Government argues that the district

---

total amount included in such judgment, settlement, or compromise.

**2.** Section 331 provides:

> For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during other than a period of war, the United States will

pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is the result of the veteran's own willful misconduct.

court was prohibited by section 211(a),[3] which bars judicial review of claims determinations, from applying the section 351 setoff to this case.

We agree. As the Supreme Court recently reaffirmed, section 211(a) is intended to preclude review of "decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans." *Traynor v. Turnage,* —— U.S. ——, 108 S.Ct. 1372, 1379, 99 L.Ed.2d 618 (1988) (quoting *Johnson v. Robison,* 415 U.S. 361, 367, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974)). In *Traynor,* the Court allowed judicial review of a claim that a VA regulation violated another federal law, the Rehabilitation Act of 1973. In reaching its conclusion that 211(a) did not bar review, the Court stated that the case did not present a challenge that the regulation was inconsistent with the statute under which it was issued, or to a VA construction of a statute dealing with veterans' benefits. The court further noted that there was no reason to believe that the VA held any special expertise in judging the validity of its regulations in light of subsequent federal laws of general application. Judicial review has been limited to a very narrow range of cases, such as those challenging the constitutionality of the statute or the authority to promulgate regulations. *See Merged Area X v. Cleland,* 604 F.2d 1075 (8th Cir.1979); *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974).

In contrast, Cole is seeking review of a decision by the VA in the administration of the veterans' benefits statute. The VA has determined he is entitled to benefits under section 331. The district court, while not rejecting that rating, determined that the setoff provisions of section 351 were nevertheless applicable. This clearly involves the judiciary in the administration of the benefits statutes, something we are prohibited by section 211(a) from doing.

The cases in which the courts have refused to engage in review of Administration decisions are numerous. *See, e.g., Barefield v. Byrd,* 320 F.2d 455 (5th Cir. 1963) (appeal from denial of claim for benefits and backpay for benefits allegedly underpaid dismissed because of section 211(a) bar), *cert. denied,* 376 U.S. 928, 84 S.Ct. 675, 11 L.Ed.2d 624 (1964); *Milliken v. Gleason,* 332 F.2d 122 (1st Cir.1964) (per curiam) (because effect of plaintiff's suit is to challenge the VA's denial of benefits to her, section 211(a) prohibits judicial review), *cert. denied,* 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965); *Redfield v. Driver,* 364 F.2d 812 (9th Cir.1966) (no jurisdiction to review denial of payments to veteran's widow); *Wickline v. Brooks,* 446 F.2d 1391 (4th Cir.1971) (no jurisdiction to review denial of benefit claim), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 749, 30 L.Ed. 2d 750 (1972); *Ross v. United States,* 462 F.2d 618 (9th Cir.) (per curiam) (suit charging that a doctor put defamatory psychiatric report in plaintiff's file which served as basis for denial of claim was in substance a challenge to denial of benefits and barred from review by section 211(a)), *cert. denied,* 409 U.S. 984, 93 S.Ct. 326, 34 L.Ed.2d 249 (1972); *De Rodulfa v. United States,* 461 F.2d 1240 (D.C.Cir.) (no jurisdiction over VA decision to terminate benefits), *cert. denied,* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972); *Pappanikoloaou v. Admin'r of the Veterans Admin.,* 762 F.2d 8 (2d Cir.) (to extent suit seeks benefits which have been claimed and denied, not subject to judicial review), *cert. denied,* 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985); *Roberts v. Walters,* 792 F.2d 1109 (Fed.Cir.1986) (challenge to decision of VA that educational benefits for full-time study be prorated to reflect claimant's part-time status not subject to review).

The cases relied on by Cole in which judicial review was undertaken are distinguishable here. In *de Magno v. United*

---

**3.** Section 211(a) provides:

On and after October 17, 1940, except as provided in sections 775, 784, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

*States*, 636 F.2d 714 (D.C.Cir.1980), the court examined the VA's determination that the plaintiff had made fraudulent statements to the agency concerning another person's benefits which was the underlying basis for its decision to offset its payments to her against her insurance benefits. In *DiSilvestro v. United States*, 405 F.2d 150 (2d Cir.1968), the court reviewed the VA's determination that a veteran had submitted false evidence which was the basis for its decision to impose a setoff against insurance benefits. In *United States v. Owens*, 147 F.Supp. 309 (E.D.Ark. 1957), the Government was the plaintiff in a suit to recover benefits allegedly overpaid. These cases all involve some affirmative action by the Government that is not present in this case. The Government admits that Cole is entitled to benefits; the dispute centers only on how that compensation is to be made. Such a decision rests with the VA.

Thus, on remand, the court must determine the portion of benefits already received that is attributable to the malpractice and subtract that sum from the tort judgment. In addition, the court also must reduce the award by the present value of the expected future benefits Cole will receive as a result of his increased disability. However, only that portion of the benefits that are attributable to the malpractice, and thus intended to be compensated by the award, should be deducted. In this fashion, the court will see to it that there will be no double compensation for the same injury.

As a final matter, we note that both parties, in their briefs and in oral argument, were unclear on the alternatives this Court had in deciding this case and could not articulate precisely what they wanted the Court to do on remand. In a case like this it is important that the parties, particularly the Government, show alternative computations and the sources or principles applied in making these computations. If the attorneys do not understand their own case, it is exceedingly hard for the Court to reach the proper result. A fixed position,

offering the Court no flexibility, is not helpful.

REMANDED.