**Thomas CARTER and Colleen Carter, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. S90–448 (RLM).**

United States District Court, N.D. Indiana, South Bend Division.

Feb. 18, 1992.

Barry Rooth, Merrillville, Ind., for plaintiffs.

Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

On June 24, 1991, this court ruled that the United States, when sued under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, for an alleged act of medical practice committed in Indiana, is entitled to the protection of the $500,000.00 limitation on medical malpractice awards that Indiana law provides to "qualified health care providers". IND. CODE 16–9.5–2–2. *Carter v. United States,* 768 F.Supp. 670 (N.D.Ind.1991). The ruling was not based on the legislative intent behind Indiana's law; indeed, Indiana law would prohibit the United States from becoming a qualified health care provider. *See* IND. CODE 16–9.5–1–1(a)(1); 16–10–1–7. Instead, the court's ruling was based on the rationale of the FTCA: that the government be treated as a similarly situated private party. 28 U.S.C. § 2674.

Indiana's legislature cannot affect the reach of the FTCA by treating the government differently from other litigant-citizens.

The court having applied the Indiana Medical Malpractice Act in ways unanticipated by the Indiana legislature, the government's summary judgment motion now presents another question of first impression: whether the government's right to set off the "enhanced" governmental benefits plaintiff Thomas Carter has received and will receive as a result of his condition operates so as to cut off his right to further recovery altogether. The court reluctantly concludes that the set-off right so operates, and that the government's summary judgment motion must be granted because Mr. Carter can recover no more than he already is entitled to receive.

The United States need not pay twice for the same injury under the FTCA. *Brooks v. United States*, 337 U.S. 49, 51, 69 S.Ct. 918, 919, 93 L.Ed. 1200 (1949) (servicemen's benefits should be deducted from a judgment obtained under the FTCA). If the United States has and will pay "enhanced" VA benefits to a plaintiff, the United States is entitled to a *pro tanto* reduction of the award to the plaintiff. *United States v. Brown*, 348 U.S. 110, 113, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954) (VA disability payments did not preclude recovery, "but only reduced the amount of any judgment under the [FTCA]."); *Cole v. United States*, 861 F.2d 1261 (11th Cir.1988) (payments plaintiff had received and would receive to compensate for malpractice, as opposed to head injury, should be deducted from malpractice recovery).

If one adds the enhanced benefits Mr. Carter already has received, and the present value of enhanced benefits Mr. Carter will receive in the future, the total exceeds $500,000.00.

Before the December 17, 1987 surgery giving rise to this suit, Mr. Carter received monthly disability payments from the Department of Veterans Affairs consistent with his 10% service-connected disability rating. Following that surgery and the worsening condition of Mr. Carter's right leg, Mr. Carter received payments consistent with greater disability ratings. Mr. Carter's disability rating was increased to 20% in May, 1988, and to 30% in March, 1989. Between February and July 1989, Mr. Carter's payments were consistent with a 30% rating. In November 1990, the VA increased Mr. Carter's rating to 80% and he was granted a "K" award (an entitlement to monthly benefits for the loss of use of his right foot, effective as of July 14, 1989). However, in February 1991, the VA again increased Mr. Carter's rating to 100% effective as of July 1989.

A veteran with a rating of 30% or greater receives a monthly allotment for a spouse and each dependent. Service-connected disability payments are not taxable and are paid for the lifetimes of the veteran and the veteran's surviving spouse. As of January 1, 1991, a veteran with a 100% disability rating and a spouse and one child received $1,783.00 per month, and an additional $149.00 per month for each additional dependent. The Carters have two dependent children. Between January 1, 1987 and December 31, 1991, Mr. Carter received $72,477.00 in enhanced payments (the amount that exceeded the payments Mr. Carter would have received with a 10% disability rating). The court must accept the VA's determination of Mr. Carter's eligibility for benefits. *Cole v. United States*, 861 F.2d at 1265–66; *Maroszan v. United States*, 852 F.2d 1469, 1471 n. 3 (7th Cir.1988).

Unfortunately, no one expects Mr. Carter's condition to improve. He will receive disability payments for the rest of his life if his condition does not improve. The government's expert economist, Professor Roger Skurski, calculated that, given the Carters' life expectancy and depending on the interest rate, the present value of the enhanced payments the Carters will receive could be $457,643.00, $530,534.00 or $531,267.00. Under any of Professor Skurski's calculations, therefore, the sum of the present value of the enhanced benefits the Carters would receive and the enhanced benefits already paid exceeds the maximum

recovery the Carters could obtain in this action.

The Carters expect to prove damages well in excess of the $500,000.00 "cap" on malpractice awards under Indiana law. If they do not do so, the government's set-off will eradicate their recovery. If they prove damages in excess of $500,000.00, however, the summary judgment motion turns on when the government's set-off is applied.

Using and rounding off the lowest figure offered by Dr. Skurski, the government would be entitled to a set-off of about $530,000.00. The following examples, assuming a hypothetical finding that the plaintiffs' pre-cap, pre-set-off damages total $800,000.00 (any figure in excess of $530,000.00 would show the point), demonstrate the centrality of the timing of the set-off and the cap:

IF SET–OFF PRECEDES CAP

| | |
|---|---|
| Proven damages | $800,000.00 |
| Less government's set-off | − 530,000.00 |
| Remaining damages | $270,000.00 |

$500,000.00 cap does not come into play

IF CAP PRECEDES SET–OFF

| | |
|---|---|
| Proven damages | $800,000.00 |
| Less excess over cap | − 300,000.00 |
| Damages recoverable under Act | $500,000.00 |
| Less government's set-off | − 530,000.00 |
| Award to plaintiffs | $      0.00 |

---

The Carters cite two cases in support of their proposition that the set-off should be applied against their recovery, if any, in excess of $500,000.00. In *Knecht v. United States*, 242 F.2d 929 (3rd Cir.1957), the plaintiff had proven damages of $55,000.00, the government was entitled to a benefits set-off of $16,075.00, and an applicable Alaskan statute limited recovery to $15,000.00. The Third Circuit reasoned that the set-off should not be made against the $15,000.00 judgment because the set-off was unnecessary to prevent the government from paying twice for the same injury. The government would pay $31,075.00 for a pecuniary injury of $55,000.00: "Thus, there is no overreaching, no double payment, and no unfairness to the United States." *Knecht*, 242 F.2d at 931.

In *Harris v. United States*, 218 F.Supp. 785 (E.D.Va.1963), the court awarded the maximum sum permitted under Virginia law and acceded to the plaintiff's request to divide the $35,000.00 award evenly among the decedent's children. Anticipating the government's request to set-off benefits received by the widow, the court noted that the set-off applies only when full compensation for the injury has been awarded. Because the loss to the widow and children greatly exceeded the $35,000.00 awardable under Virginia law, the court concluded that the set-off, designed to prevent the government from paying more than the injury is worth, should not apply.

The court agrees with the approaches of the *Knecht* and *Harris* courts as a matter of federal law. The government's set-off rights, a matter of federal origin, should not alone defeat the plaintiffs' right of recovery if the plaintiffs can establish actual damages in excess of the benefits.

In an action under the Federal Tort Claims Act, however, the court must apply the law of the state in which the tort is alleged to have been committed. *Molzof v. United States*, —— U.S. ——, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992); *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). As noted above, the Indiana General Assembly never contemplated the Malpractice Act's application in a suit involving the United States. As noted in the earlier opinion in this case, the government may be held liable only to the extent a private actor would be held liable

under similar circumstances. 28 U.S.C. § 2674. Accordingly, the court must determine how Indiana law would treat one in a position reasonably analogous to that of the government.

The closest analogy is to be found in § 4 of the Indiana Medical Malpractice Act:

Evidence of an advance payment is not admissible until there is a final judgment in favor of the plaintiff, in which event the court shall reduce the judgment to the plaintiff to the extent of the advance payment. The advance payment shall inure to the exclusive benefit of the defendant or his insurer making the payment. In the event the advance payment exceeds the liability of the defendant or the insurer making it, the court shall order any adjustment necessary to equalize the amount which each defendant is obligated to pay, exclusive of costs. In no case shall an advance payment in excess of an award be repayable by the person receiving it.

IND. CODE 16–9.5–2–4.

As the Carters note, the enhanced VA payments they are receiving are not true "advance payments" under Indiana law, which defines an "advance payment" as one made by the defendant or the defendant's insurance company to or for the plaintiff or any other person. IND. CODE 34–3–2.5–1. The Carters' enhanced VA payments do not depend on the United States' liability to them. Nonetheless, IND. CODE 16–9.5–2–4 would apply to a defendant-physician who, for whatever reason, made monthly payments to a plaintiff-patient after the patient was harmed by virtue of the physician's treatment, even if the physician had not been negligent. Accordingly, the court agrees with the government that IND. CODE 16–9.5–2–4 is the most analogous provision in the Indiana Medical Malpractice Act.

Whether read alone or in concert with other statutory provisions, IND. CODE 16–9.5–2–4 indicates that advance payments (and by analogy, the government's set-off) are to be deducted from the judgment, not the proven damages. As noted above, the judgment cannot exceed $500,000.00. IND. CODE 16–9.5–2–4 specifically directs credit against the final judgment; any ambiguity is resolved by reference to IND. CODE 34–3–2.5–2, which requires the reduction of "the award to the plaintiff" by the extent of advance payments in other actions. The Medical Malpractice Act requires reduction of the judgment, not of the award.

For the reasons set forth in the earlier opinion, the judgment to be awarded the plaintiffs cannot exceed $500,000.00 under Indiana law. A private defendant in a situation analogous to that of the United States (as unlikely as such a private defendant might be) would be entitled to a reduction of the judgment to extent of payments to the plaintiffs as a result of the injury. Under the FTCA, then, the United States is entitled to claim that set-off. The record before the court demonstrates that the set-off necessarily will exceed any amount the plaintiffs can recover under Indiana law.

The Carters argue that the enhanced benefits paid to Mr. Carter should be credited only against his recovery and not against Mrs. Carter's recovery. They further claim that the benefits paid on behalf of the children should only be applied against Mrs. Carter's recovery, because the children are no longer parties to this action. However, as the court previously determined, the total recovery is limited to $500,000.00. *Carter v. United States*, 768 F.Supp. at 675; IND. CODE 16–9.5–2–2(a). Further, because Mrs. Carter's claim is derivative, IND. CODE 16–9.5–1–1(c), if Mr. Carter cannot recover damages, she cannot recover either.

The government argues that it is not liable for attorney fees when the plaintiff cannot recover an affirmative monetary judgment. In *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), the Supreme Court determined that the attorney fee provision within the Clean Air Act, 42 U.S.C. § 7607(f), did not contemplate awarding attorney fees to a party who did not obtain some degree of success on the merits. After discussing the fee-shifting provisions within various federal statutes, Justice Rehnquist stated that:

While the foregoing treatments of fee-shifting differ in many respects, they reflect one consistent, established rule: a successful party need not pay its unsuccessful adversary's fees. The uniform acceptance of this rule reflects, at least in part, intuitive notions of fairness to litigants.

*Ruckelshaus v. Sierra Club,* 463 U.S. at 685, 103 S.Ct. at 3277. The Carters do not dispute the government's position on attorney fees, and the court finds the government's position correct.

This appears to be a harsh case. Indiana's cap on recoveries for medical malpractice limits the amount that could be awarded to the Carters to an extent that the government may not be required, under the FTCA, to provide full compensation to the Carters; the government's entitlement to credit for its payments to the Carters further reduces the Carters' potential recovery to nothing. The harshness is ameliorated somewhat by recognition that by virtue of the government's obligations to Mr. Carter as a veteran, the Carters will receive a sum greater than any award that could be made to other medical malpractice victims under Indiana law.

Nonetheless, the government has demonstrated that no genuine issue of fact exists as to the extent of its entitlement to the set-off, and that governing state law requires that the set-off be made against a judgment that cannot exceed $500,000.00. Because the plaintiffs cannot recover an award of damages, all remaining factual issues are immaterial, and the United States is entitled to judgment as a matter of law. Accordingly, the defendant's summary judgment motion must be, and hereby is, GRANTED, and the clerk is directed to enter judgment for the United States.

SO ORDERED.